1
2
3
4
5
6

Alexander M. Medina (Cal. Bar No. 222015)
Brandon R. McKelvey (Cal. Bar No. 217002)
Timothy B. Nelson (Cal. Bar No. 235279)
MEDINA MCKELVEY LLP
983 Reserve Drive
Roseville, California 95678
Telephone:  (916) 960-2211
Facsimile:   (916) 742-5488
Email: alex@medinamckelvey.com
          brandon@medinamckelvey.com
          tim@medinamckelvey.com

7
8
9
10
11
12

Alfredo A. Bismonte (Cal. Bar No. 136154)
Ronald C. Finley (Cal. Bar No. 200549)
Jeremy M. Duggan (Cal. Bar No. 229854)
BECK, BISMONTE & FINLEY, LLP
150 Almaden Boulevard, 10th Floor
San Jose, California 95113
Telephone:  (408) 938-7900
Facsimile:   (408) 938-0790
Email: abismonte@beckllp.com
          rfinley@beckllp.com
          jduggan@beckllp.com

13
14
15

Attorneys for Plaintiffs
MARGARET TUMAMPOS,
JONATHAN LAM, and CONNIE LAI on
their behalf and others similarly situated

16        IN THE UNITED STATES DISTRICT COURT FOR THE

17             NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| 18  MARGARET TUMAMPOS, JONATHAN<br>19  LAM, AND CONNIE LAI ON THEIR<br>     BEHALF AND OTHERS SIMILARLY<br>20  SITUATED,<br><br>21                    Plaintiffs,<br>22  v.<br><br>23  CATHAY PACIFIC AIRWAYS LTD.,<br>24                    Defendant. | **CASE NO. 4:16-CV-06208-CW**<br>*Assigned for All Purposes:*<br>*Honorable Claudia A. Wilken*<br><br>**UNOPPOSED MOTION FOR<br>PRELIMINARY APPROVAL OF CLASS<br>ACTION SETTLEMENT**<br><br>Date:           January 9, 2018<br>Courtroom:  TBD<br>Time:           2:30 pm<br><br>Action Filed:                     October 26, 2016<br>Amended Complaint Filed:  January 27, 2017<br>Trial:                                Not Yet Set |

25
26
27
28

- 1 -



**NOTICE OF MOTION AND MOTION**

**PLEASE TAKE NOTICE** that on January 8, 2018, at 2:30 p.m. before the Honorable Claudia A. Wilken in Courtroom _____ of the United States District Court for the Northern District of California, Oakland Division, located at 1301 Clay Street, Oakland, California 94612, Plaintiffs Margaret Tumampos, Jonathan Lam, and Connie Lai will and hereby do move for an order of the Court to preliminarily approve the class action settlement; certify the proposed settlement class under Rule 23(b)(3); appoint Margaret Tumampos, Jonathan Lam, and Connie Lai as class representatives; appoint Plaintiffs' counsel Medina McKelvey LLP and Beck, Bismonte & Finley, LLP as counsel for the certified class under Rule 23(g); order dissemination of class notice pursuant to the notice plan set forth in the Settlement Agreement; and set a schedule for final settlement approval.

Plaintiffs' motion is based on this notice; the accompanying Memorandum of Points and Authorities; the Declaration of Timothy B. Nelson and all attachments thereto (including the settlement agreement); and [Proposed] Order Granting Preliminary Approval of Class Settlement; and all other papers filed and proceedings had in this action.

Dated: December 5, 2017                    MEDINA McKELVEY LLP


                                           By:   /s/ Timothy B. Nelson
                                               TIMOTHY B. NELSON
                                               Attorney for Plaintiffs

**MEMORANDUM OF POINTS AND AUTHORITIES**

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION ........................................................................................................ 7

II.  SUMMARY OF THE CLAIMS AND THE RELEVANT PROCEDURAL
     HISTORY ................................................................................................................. 8

     A.   Plaintiffs' Original Complaint ...................................................................... 8

     B.   Defendant Moved to Dismiss and/or Strike the Original Complaint .................... 8

     C.   Plaintiffs Filed a First Amended Complaint ....................................................... 9

     D.   Defendant Moved to Dismiss and/or Strike the First Amended Complaint .......... 9

     E.   Defendant Filed a Motion to Certify the Court's April 25 Order for
          Interlocutory Appeal and to Stay This Action ................................................. 10

     F.   The Parties Conducted Extensive Discovery .................................................... 11

     G.   The Parties Participated in a Full-Day Mediation with Judge Duryee ............... 11

III. SUMMARY OF THE SETTLEMENT TERMS ....................................................... 12

     A.   The Proposed Settlement Class ...................................................................... 12

     B.   The Total Settlement Payout .......................................................................... 13

     C.   Settlement Administrator ............................................................................... 14

     D.   The Notice Program ...................................................................................... 14

     E.   The Release .................................................................................................. 15

     F.   Opportunity to Opt Out and Object ............................................................... 15

     G.   Class Representatives' Application for Service Awards .................................... 16

     H.   Class Counsel's Application for Attorneys' Fees, Costs, and Expenses ............ 16

IV.  LEGAL DISCUSSION .............................................................................................. 17

     A.   Preliminary Approval Standard ...................................................................... 17

     B.   Preliminary Approval of the Settlement Is Appropriate ................................... 17

Page

1.   Plaintiffs' Litigation Contentions and Views on the Proposed
     Settlement ............................................................................................19

2.   Defendant's Litigation Contentions.........................................................21

C.   Plaintiffs Contend that the Proposed Settlement Class Satisfies the
     Requirements of Rule 23 ........................................................................22

V.   THE PROPOSED NOTICE TO MEMBERS OF THE CLASS IS ADEQUATE
     AND SATISFIES DUE PROCESS .................................................................24

VI.  CONCLUSION..........................................................................................25

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO: 4:16-CV-06208-CW

1

**TABLE OF AUTHORITIES**

2

<u>Cases</u>                                                                                                            <u>Page</u>

3

4

*Amchem Prods. v. Windsor* (1997)
    521 U.S. 591 [117 S.Ct. 2231, 138 L.Ed.2d 689].......................................................22

5

*Ball v. Petrol Transp., Inc.*
    (E.D.Cal. May 30, 2006, No. CV-F-04-5370-AWI-LJO) 2006

6

    U.S.Dist.LEXIS 35959 .............................................................................................18

7

*Birch v. Office Depot, Inc.*
    (S.D.Cal. Sep. 28, 2007, No. 06 CV 1690 DMS (WMC)) 2007

8

    U.S.Dist.LEXIS 102747 .................................................................................... 20-21

9

*Churchill Vill., L.L.C. v. GE* (9th Cir. 2004)

10

    361 F.3d 566 .............................................................................................................25

11

*Class Plaintiffs v. Seattle* (9th Cir. 1992)

12

    955 F.2d 1268 ...........................................................................................................17

13

*Fredrickson v. Starbucks Corp.* (D.Or. 2013)

14

    980 F.Supp.2d 1227 ..................................................................................................22

15

*Hanlon v. Chrysler Corp.* (9th Cir. 1998)
    150 F.3d 1011 .................................................................................................... 17-20

16

*In re M.L. Stern Overtime Litig.*

17

    (S.D.Cal. Apr. 13, 2009, No. 07-CV-0118-BTM (JMA)) 2009

18

    U.S.Dist.LEXIS 31650 .............................................................................................18

19

*In re Portal Software Sec. Litig.*
    (N.D.Cal. June 30, 2007, No. C-03-5138 VRW) 2007

20

    U.S.Dist.LEXIS 51794 ...................................................................................... 18-19

21

*In re Tableware Antitrust Litig.* (N.D.Cal. 2007)

22

    484 F.Supp.2d 1059 ..................................................................................................19

23

*In re Xoma Corp. Sec. Litigation*
    (N.D.Cal. July 10, 1992, Master File No. C-91-2252 TEH) 1992

24

    U.S.Dist.LEXIS 10502 .............................................................................................19

25

*Marshall v. Pollin Hotels II, LLC* (D.Or. 2016)

26

    170 F. Supp. 3d 1290 ...............................................................................................22

27

*Mendoza v. United States* (9th Cir. 1980)
    623 F.2d 1338 ...........................................................................................................25

28



<u>Cases (cont.)</u>                                                                 <u>Page</u>

*Mullane v. Cent. Hanover Bank & Trust Co.* (1950)
    339 U.S. 306 [70 S.Ct. 652, 94 L.Ed. 865]..............................................24

*Negrete v. Allianz Life Ins. Co. of N. Am.* (C.D.Cal. 2012)
    287 F.R.D. 590....................................................................................23

*Rannis v. Recchia* (9th Cir. 2010)
    380 F.App'x 646............................................................................ 22-23

*Rippee v. Boston Mkt. Corp.* (S.D.Cal. Oct. 10, 2006, No. 05cv1359 BTM(JMA)) 2006
    U.S.Dist.LEXIS 101136 ................................................................ 20-21

*Sibert v. TV Magic, Inc.*
    (C.D.Cal. Aug. 21, 2012, No. CV 12-03404 DDP (MRWx)) 2012
    U.S.Dist.LEXIS 118245 .......................................................................22

*Utility Reform Project v. Bonneville Power Admin.* (9th Cir. 1989)
    869 F.2d 437 .........................................................................................17

*Van Bronkhorst v. Safeco Corp.* (9th Cir. 1976)
    529 F.2d 943 .........................................................................................17

*Wal-Mart Stores, Inc. v. Dukes* (2011) 564 U.S. 338
    [131 S.Ct. 2541, 180 L.Ed.2d 374]......................................................23

*Yokoyama v. Midland Nat'l Life Ins. Co.* (9th Cir. 2010)
    594 F.3d 1087 .......................................................................................24

*Young v. Polo Retail, LLC* (N.D.Cal. Oct. 25, 2006, No. C-02-4546 VRW) 2006
    U.S.Dist.LEXIS 81077 ...................................................................17, 19

<u>Statutes</u>

Fed. R. Civ. Proc. 23.................................................................................... 23-24

<u>Other</u>

*Manual for Complex Litigation (Fourth)* § 30.41 (3d ed. 1995) ...................... 18-19

*Manual for Complex Litigation (Fourth)* (2004)..............................................17

*Newberg* ............................................................................................. 17-18, 24

- 6 -



## I.     INTRODUCTION

Plaintiffs Margaret Tumampos, Jonathan Lam, and Connie Lai ("Plaintiffs") are individuals who were employed by Defendant Cathay Airways Pacific Ltd. ("Defendant" or "Cathay") as California-based flight attendants operating on flights to Hong Kong out of San Francisco or Los Angeles.  Plaintiffs, on the one hand, and Defendant, on the other hand, have reached a settlement of the class and representative action claims alleged in this case.  Pursuant to the Settlement Agreement,[1] Defendant has agreed to pay the total sum of $1,900,000.00 to settle Plaintiffs' and the Class Members' claims for damages, statutory penalties, and civil penalties for alleged violations of the California Labor Code.  This settlement is fair and reasonable given the defenses that Defendant has asserted in this case and the potential for protracted litigation, including appeals.   Accordingly, Plaintiffs respectfully request that this Court preliminarily approve the settlement and conditionally certify the Class for settlement purposes.

In this case, Plaintiffs contend that Defendant violated various state wage and hour laws. For purposes of this settlement, Plaintiff has proposed one class of current and former Cabin-Crew employees who were based in California going back three years before the October 26, 2016 initiation of this case.  All these individuals will share in the $1,900,000.00 settlement.  The following is the proposed structure for the distribution of the Gross Settlement Fund:

- Total Settlement Amount:                                          $1,900,000.00
- Attorneys' Fees (not to exceed $570,000):           $570,000.00
- Attorneys' Costs (not to exceed $15,000):            $15,000.00
- Plaintiffs' Incentive Awards (not to exceed):        $30,000.00 (or $10,000 each)
- Costs of Claims Administration (not to exceed):   $12,000.00
- PAGA Payment:                                                          $28,500.00
- Net Settlement Amount:                                             $1,244,500.00

All told, the proposed distribution constitutes an outstanding result for Plaintiffs and the Class Members, achieved after a full day of mediation with Judge Lynn Duryee (Ret.), an experienced

---

[1] A copy of the Settlement Agreement is attached to the Declaration of Timothy Nelson in Support of this Motion for Preliminary Approval of Class Action Settlement ("Nelson Decl.").



retired judge, based on a mediator's proposal for settlement. (Nelson Decl., ¶ 12.)  The proposed resolution of this matter should receive preliminary approval.

## II.   SUMMARY OF THE CLAIMS AND THE RELEVANT PROCEDURAL HISTORY

### A.   Plaintiffs' Original Complaint

Plaintiff Margaret Tumampos commenced this putative class and collective action against Defendant on October 26, 2016.  Tumampos works as a member of Cathay's Cabin Crew (flight attendants) and flies to Hong Kong from Cathay's bases in California.  The central allegations in Tumampos' initial Complaint were that Defendant illegally and unlawfully deducted Federal Insurance Contributions Act ("FICA") and California State Disability Insurance ("SDI") taxes from the wages of Cathay's Cabin Crew, and that Cathay did not provide Class Members with meal and rest breaks pursuant to California law.  Based on those allegations, the initial Complaint alleged the following claims: (1) violations of the Fair Labor Standards Act for unlawful deductions from wages; (2) failure to pay all wages due pursuant to California Labor Code sections 221 and 223 and Civil Code section 1670.5, 3275 and 3369; (3) unlawful and unauthorized deductions from wages in violation of Labor Code section 221; (4) failure to timely pay wages during employment in violation of Labor Code section 204; (5) failure to provide accurate, itemized wage statements in violation of Labor Code section 226; (6) failure to pay all wages due at the time of termination in violation of Labor Code sections 201–203; (7) failure to pay contracted wages in violation of Labor Code section 223; (8) conversion; (9) promissory estoppel; (10) failure to provide meal periods; (11) failure to provide rest periods; and (12) unfair business practices under California Business and Professions Code section 17200 *et seq.* (the "UCL").  Tumampos sought relief on her own behalf and on behalf of a class of Defendant's U.S.-based cabin crew, flight attendants, or similar titles who were employed by Defendant going back four years.  (Nelson Decl., ¶ 2.)

### B.   Defendant Moved to Dismiss and/or Strike the Original Complaint

On February 10, 2017, Defendant filed a Motion to Dismiss the Complaint.  Defendant filed a Motion to Strike certain allegations in the Complaint on February 13, 2017.  Defendant's

- 8 -

motions made two principal arguments: (1) all of the claims alleged in the Complaint predicated on the withholding of FICA and SDI taxes were preempted by federal law and barred by the California Constitution, respectively; and (2) the Complaint's meal and rest break claims failed as a matter of law because California's meal and rest break laws do not apply extraterritorially to work performed principally outside California, and Plaintiffs and the putative Class Members perform most of their duties outside California on international flights to Hong Kong.  (Nelson Decl., ¶ 3.)

### C.     Plaintiffs Filed a First Amended Complaint

After extensive research and revisions, on January 27, 2017, Tumampos, along with two additional Cathay flight attendants, Connie Lai and Jonathan Lam, filed the First Amended Complaint.  The First Amended Complaint refined Plaintiffs' allegations and claims for relief, and included an additional claim for civil penalties pursuant to the Private Attorneys General Act (the "PAGA") predicated on the alleged violations of the California Labor Code.  Plaintiffs pled the following claims: (1) failure to provide meal periods; (2) failure to provide rest periods; (3) failure to timely pay wages during employment; (4) failure to provide accurate itemized wage statements; (5) failure to pay all wages due at the time of termination; (6) breach of contract; (7) unlawful wage deductions; (8) unfair business practices; and (9) claims under the Private Attorneys General Act.  (Nelson Decl., ¶ 4.)

### D.     Defendant Moved to Dismiss and/or Strike the First Amended Complaint

On February 10, 2017, Defendant filed a Motion to Dismiss and a Motion to Strike with respect to the First Amended Complaint.  These motions relied on the same principal arguments in the initial Motion to Dismiss and Motion to Strike: that claims related to unlawful withholding of FICA and SDI taxes were preempted or barred under federal and state law, and that Plaintiffs' meal and rest break claims failed because California's meal and rest break laws do not apply extraterritorially.  The parties extensively briefed these issues.  (Nelson Decl., ¶ 5.)

On April 25, 2017, the Court issued a detailed order granting in part and denying in part Defendant's Motion to Dismiss.  The Court dismissed Plaintiffs' meal and rest break-related claims with leave to amend.  The Court did not dismiss Plaintiffs' claims predicated on unlawful

FICA and SDI tax withholdings.  The Court's order provided a mechanism for Defendant to seek permission to file an early motion for summary judgment as to whether California law applies to Plaintiffs' work for Cathay in connection with the remaining claims for relief.   (Nelson Decl., ¶ 6.)

In summary, the Court's April 25, 2017 Order provided the following:

- Plaintiffs' claim for breach of contract was dismissed with leave to amend;
- Plaintiffs' meal and rest break claims were dismissed with leave to amend.  Plaintiffs were permitted to amend their meal and rest break claims if they could truthfully allege, without contradicting the allegations in the existing complaint, facts to support a finding that they worked principally in California as well as a finding that Defendant was a California employer.  In the alternative, Plaintiffs were granted leave to amend these claims if they could truthfully allege, without contradicting the allegations in the existing complaint, that Plaintiffs were entitled to relief for meal and rest period violations based only on the work performed in California.
- Plaintiffs' eight claims for unfair business practices was dismissed with leave to amend only to the extent the claim was based on the FICA and SDI withholdings.
- Plaintiffs were permitted to proceed their Labor Code claims based on the improper FICA and SDI withholdings.  (Nelson Decl., ¶ 6.)

Rather than attempt to amend their pleading once again, Plaintiffs instead chose to move forward with its unlawful deduction claims, while preserving their meal and rest break claims for appeal, if appropriate.  Defendant filed an answer to the First Amended Complaint on June 8, 2017.  (Nelson Decl., ¶ 7.)

### E.   Defendant Filed a Motion to Certify the Court's April 25 Order for Interlocutory Appeal and to Stay This Action

On May 23, 2017, Defendant filed a motion to certify the April 25, 2017 order for interlocutory appeal and to stay the action.  Plaintiffs opposed this motion, and on June 30, 2017, the Court denied Defendant's motion to certify the April 25, 2017 order. (Nelson Decl., ¶ 8.)

///

- 10 -

**F.     The Parties Conducted Extensive Discovery**

As described above, the parties have actively litigated this action since the filing of the Complaint.  This case has been pending for over a year, and during that time, the parties have engaged in substantial discovery.  More specifically, Plaintiffs have served, and Defendant has responded to multiple written discovery requests.  In addition to special interrogatories, Plaintiffs propounded three sets of requests for production of documents seeking 108 categories of documents on Defendant.  (Nelson Decl., ¶ 10.)   The parties met and conferred extensively regarding discovery, particularly with respect to the production of ESI and agreed upon a rolling production, with the most critical documents relating to liability and Plaintiffs' potential damages being produced first.  As a result, Defendant produced, and Plaintiffs reviewed and analyzed, thousands of pages of documents and data, including, Plaintiffs' pay records, wage statements and Defendant's policy and procedure documents.  In addition, Plaintiffs' counsel conducted in-depth interviews of a number of putative class members, research the developing case law concerning the claims asserted in this case and the potential defenses thereto, and conducted an in-depth analysis of potential class-wide damages; and extensive research of the applicable law with respect to the claims asserted in the action.  (*Id.*)

**G.     The Parties Participated in a Full-Day Mediation with Judge Duryee**

On August 9, 2017, the parties participated in a full day of private mediation with the Honorable Judge Lynn Duryee (Ret.) at the JAMS office in San Francisco.  Plaintiffs Margaret Tumampos, Connie Lai, and Jonathan Lam traveled significant distances to attend the mediation in person.  Defendant had two corporate representatives at the mediation, both of whom traveled from Hong Kong.  Before the mediation, both sides submitted comprehensive mediation briefs to Judge Duryee setting forth the legal merits of their respective positions.  Prior to the mediation, the parties also exchanged data relating to the class members' average salary information, weeks worked, and the size of the class.  The issues in the mediation were aggressively contested and included significant debate.   The mediation began at 9:30 a.m. and did not conclude until approximately 8:30 p.m. when both sides ultimately accepted a settlement along the lines of the mediator's proposal.  (Nelson Decl., ¶ 12.)

- 11 -

1    The proposed settlement was reached after Plaintiffs' counsel thoroughly reviewed all of

2    the evidence produced by Cathay and after arm's length bargaining by the parties.  The formal

3    and informal discovery conducted in this case and the information exchanged through the parties'

4    negotiations were sufficient to reliably assess the merits of the respective parties' positions and to

5    compromise the issues on a fair and equitable basis.

6    **III.    SUMMARY OF THE SETTLEMENT TERMS**

7    The Settlement provides for the payment of one million, nine hundred thousand U.S.

8    dollars ($1,900,000.00) (the "Gross Settlement Amount"), as consideration for the settlement and

9    dismissal of the action and the related release of claims the members of the class may have

10   against Defendant.   Pursuant to the Settlement Agreement, most of the $1,900,000.00 will be

11   shared by all California-based Cabin Crew who worked for Defendant from October 26, 2013

12   through September 9, 2016 (when Defendant ceased deducting FICA and SDI taxes from the

13   putative Class Members' wages), based on the maximum statute of limitations under Labor Code

14   section 203.

15   The approximately 445 Class Members (if they do not opt out of the settlement) will

16   receive a portion of the Net Settlement Amount based on: (a) the number of workweeks they

17   worked as California-based cabin crew from October 26, 2013 to September 1, 2016, as well as

18   (b) their length of employment as California-based cabin crew from 2006 to September 1, 2016.

19   The average payout will be about $2,800.00, and some Class Members will receive more than this

20   based on their dates of employment.  The proposed Settlement is described in more detail below.

21   (Nelson Decl., ¶¶ 13–16.)

22       **A.    The Proposed Settlement Class**

23   The proposed class for settlement purposes is defined as all current and former California-

24   based Cabin Crew who were employed by Defendant at any time between October 26, 2013 and

25   September 9, 2016.  This includes all California-based employees from whom Cathay withheld

26   FICA and SDI taxes during the relevant period.  Class Members who do not validly or timely

27   exclude themselves from the Settlement in accordance with the procedures described in the

28   ///

- 12 -

MEDINA MCKELVEY LLP

Settlement Agreement will participate in the Settlement and will be referred to as "Settlement Class Members." (Settlement Agreement ¶¶ 1.2, 1.24.)

There are approximately 445 Class Members. Defendant possesses address information for all of these Class members, which will facilitate direct mailed notice of the Settlement and expeditious and effective distribution of Settlement funds to Settlement Class Members.

**B.      The Total Settlement Payout**

In addition to payments made to Settlement Class Members, the $1,900,000.00 million settlement amounts (the "Gross Settlement Amount"), will be used to pay any court-approved Class Counsel's fees, costs and expenses, any court-approved incentive payments to Plaintiffs, the costs of settlement administration, payment of the PAGA penalty to the California Labor and Workforce Development Agency, and employer payroll taxes (if any). The amount payable to the Settlement Class Members after the above-referenced deductions is referred to as the "Net Settlement Amount." The Gross Settlement Amount is non-reversionary. (Nelson Decl., ¶ 20.)

The Net Settlement Amount will be distributed *pro rata* to the Settlement Class Members based on two criteria: (1) with respect to ninety percent (90%) of the Net Settlement Amount, each Class Member will receive a pro rata share determined by dividing the total number of complete workweeks that Class Member worked as a California-based Cabin Crew member during the Class Period by the total number of complete workweeks worked by all Settlement Class Members during the Class Period; and (2) with respect to ten percent (10%) of the Net Settlement Amount, each Class Member will receive a pro rata share determined by dividing that Class Member's total number of completed years of service as a California-based Cabin Crew member from October 2006 through the Preliminary Approval Date by the total number of completed years of service worked by all Settlement Class Members from October 2006 through entry of the Preliminary Approval Order (excluding years of service in the Class Period). (Settlement Agreement ¶ 3.2.) Class Members will be informed in their Notice Packets of their potential approximate payment under the Settlement, their total number of applicable workweeks worked during the applicable period, and their total applicable years of service from 2006 to the present. If a Class Member contests the number of workweeks worked during the relevant time

- 13 -

period, or the years of service from 2006 to September 2016, he or she may present evidence of the correct number of workweeks and the correct years of service to the Settlement Administrator for purposes of seeking an adjustment in his or her prospective payment.  (*Id.* ¶ 3.2(b).)

Within 28 days after the Court grants Final Approval of the Settlement, Defendant will provide the third-party settlement administrator with funds sufficient to enable the administrator to satisfy the payment obligations for any settlement payments to the Settlement Class Members.

Class Members will have 180 days to cash their settlement checks.  After the deadline to cash checks has expired, the Parties have agreed to distribute any uncashed checks to two *cy pres* beneficiaries: Legal Services of Northern California (an organization that provides quality legal services to indigent residents of Northern California, including assistance with employment issues such as those at issue in this lawsuit) and the National Center for Youth Law (which works to improve the lives of disadvantaged children and youth).  (*Id.* at ¶ 4.11(a)(i); Nelson Decl., ¶ 20.)

### C.     Settlement Administrator

The parties jointly request that the Court appoint ILYM Group, Inc. ("Settlement Administrator"), a third-party claims administrator, as the Settlement Administrator to facilitate the administration of all claims in this matter.  The Settlement Administrator's responsibility will include, but not be limited to:  (i) preparing and overseeing distribution of Settlement notice; (ii) maintaining the Toll-Free Number through which Class Members may request information about the Settlement and copies of the Settlement Agreement or relevant court documents; (iii) receiving any exclusion requests from the Class and compiling records relating to those requests; (iv) receiving any objections to the Settlement from Class Members and compiling records related to those objections; and (v) any other tasks reasonably required to effectuate the foregoing.  (*See*, *e.g.*, Settlement Agreement ¶ 4.1.)  The cost of the Settlement Administration is expected not to exceed $12,000.  (*Id.* ¶¶ 3.1, 3.4.)  The Settlement Agreement provides that such administrative costs will be deducted from the Gross Settlement Amount.  (*Id.* ¶¶ 3.1, 3.4.)

### D.     The Notice Program

The notice program will be carried out pursuant to paragraphs 4.4 to 4.6 of the Settlement Agreement.  Under the Settlement, Defendant will provide the Settlement Administrator with a

list of all Class Members, including last known contact information, the number of workweeks that they worked from October 26, 2013 to the date of preliminary approval, and their length of service from 2006 to the date of preliminary approval.   The Settlement Administrator will calculate each Class Member's proportional approximate share of the estimated Net Settlement Proceeds.   Within fourteen calendar days after receiving this information, the Settlement Administrator will send a Notice of Class Settlement and an Estimated Payment Form[2] to Class Members.  (Settlement Agreement ¶¶ 4.4-4.6.)

The Notice Packet will be sent via First Class Mail.  If a Notice Packet is returned as undeliverable with a forwarding address provided by the United States Postal Service, the Settlement Administrator will promptly re-send the Notice Packet to that forwarding address.  If an original Notice Packet is returned as undeliverable without a forwarding address, the Settlement Administrator will make reasonable efforts to locate forwarding addresses, including skip trace, and if it obtains a more recent address, will resend the Notice Packet.  (*Id.* ¶ 4.4.)  At least ten calendar days after the opt-out period and exclusion deadline has passed, the Settlement Administrator will provide a declaration of due diligence and proof of mailing to counsel for the parties regarding the mailing of the Notice Packet.  (*Id.* ¶¶ 4.4-4.6.)

### E.    The Release

As more fully expressed in the Settlement Agreement, Settlement Class Members will release any and all claims under state and federal law, resulting from, arising out of, or connected to this Action or its underlying subject matter.[3]  (Settlement Agreement, ¶¶ 5.1-5.4.)

### F.    Opportunity to Opt Out and Object

Under the terms of the proposed Settlement Agreement, Class members will have the right to request exclusion from the Settlement or object to its terms.  (Settlement Agreement ¶¶ 4.5-4.6.)  Requests for exclusion or objections must be received by the Settlement Administrator no later than the Objection/Exclusion Deadline.  (*Id.* ¶ 4.5-4.6.)  Class Members will be informed of

---

[2] These Notices are referred to collectively and separately as the "Notice Packet."

[3] This includes claims arising under California Labor Code sections 201–204, 210, 225.5, 221–224, 226, 226.7, 512, 2698 *et seq.*, and Business and Professions Code section 17200 *et seq.*

MEDINA McKELVEY LLP

1  these rights via direct notice through First Class Mail.  Class Members can ask questions or obtain

2  additional information by contacting Class Counsel or the Settlement Administrator through the

3  Toll-Free Number, which will be established by the Settlement Administrator.

4  **G.    Class Representatives' Application for Service Awards**

5  Under the Settlement Agreement, in addition to their individual Settlement Payments, the

6  Named Plaintiffs will each be eligible to seek the Court's approval for an "incentive payment" in

7  an amount not to exceed Ten Thousand Dollars ($10,000) in recognition for their services as

8  named Plaintiffs, including their extensive involvement in this litigation and the risks that they

9  bore as Class Representatives, including the risk that Defendant could recover taxable costs

10  against them.  (Settlement Agreement ¶¶ 3.1, 3.5.)  Any service award approved by the Court will

11  be paid out of the Gross Settlement Amount.  (*Id.*)

12  **H.    Class Counsel's Application for Attorneys' Fees, Costs, and Expenses**

13  Class Counsel[4] will request an award of attorney's fees ("Motion for Attorneys' Fees")

14  not to exceed 30% of the Gross Settlement Amount, or $570,000 to be paid from the Gross

15  Settlement Amount.  (Settlement Agreement ¶ 3.3.)  Class Counsel has undertaken representation

16  of the Class on a contingent basis at the significant risk of being uncompensated for any of the

17  work undertaken in this case.  (Nelson Decl., ¶ 40.)  Class Counsel has expended in excess of

18  1,300 hours in this action and the requested attorneys' fees are in line with the lodestar amount

19  (hours multiplied by hourly rate) worked by Class Counsel over the course of the case.  (*Id.*)

20  Class Counsel will also apply for reimbursement of actual expenses incurred in an amount not to

21  exceed $15,000.  (Settlement Agreement ¶ 3.3.)

22  Defendant has agreed that it will not oppose a petition for attorneys' fees, costs and

23  expenses that does not exceed the above amounts.  The amount of the attorneys' fees and expense

24  award will be set by the Court after providing Settlement Class Members with an opportunity to

25  submit objections, if any, to the Motion for Attorneys' Fees.  Any fee and expense amount

26  approved by the Court that is less than the amount sought by Class Counsel will be the amount

---

4  "Class Counsel" means Plaintiffs' counsel, Medina McKelvey LLP and Beck, Bismonte & Finley, LLP.  (Settlement Agreement ¶ 1.4.)

- 16 -

1  deducted from the Gross Settlement Amount to reach the Net Settlement Proceeds that will be

2  distributed to those Settlement Class Members who participate in the Settlement.  (*Id.* ¶ 3.3.)

3  **IV.  LEGAL DISCUSSION**

4      **A.  Preliminary Approval Standard**

5        The approval of a class action settlement is generally a three-step process.  The first step is

6  preliminary determination of whether the proposed settlement is within the range of possible

7  approval.  *See*, *e.g.*, *Manual for Complex Litigation (Fourth)* § 21.632 (2004).  The purpose of the

8  court's preliminary evaluation of the proposed settlement is to determine whether it is within the

9  "range of possible judicial approval," and whether class notice and the scheduling of a formal

10  fairness hearing are warranted.  *Newberg*, § 11.25.

11        If a court finds that a settlement proposal is "within the range of possible approval," it

12  then proceeds to the second step and directs that "notice be given to the class members of a

13  formal fairness hearing . . . ."  *Young v. Polo Retail, LLC*, No. C-02-4546 VRW, 2006 U.S. Dist.

14  LEXIS 81077, at *13 (N.D. Cal. Oct. 25, 2006) (quotation omitted).

15        In the third or final step, a hearing is held to determine whether the proposed settlement is

16  fair, adequate, and reasonable to the settlement class as a whole.  *Id.*  This protects settlement

17  class members' procedural due process rights and enables the court to fulfill its role as the

18  guardian of the settlement class's interests.  The decision to approve or reject a proposed

19  settlement is committed to the court's sound discretion.  *See*, *e.g.*, *Hanlon v. Chrysler Corp.*, 150

20  F.3d 1011, 1026 (9th Cir. 1998).

21        With this Unopposed Motion, Plaintiffs request that the Court take the first and second

22  steps in the settlement approval process by granting preliminary approval of the Settlement

23  Agreement.

24      **B.  Preliminary Approval of the Settlement Is Appropriate**

25        "[T]he law favors settlement, particularly in class actions and other complex cases where

26  substantial judicial resources can be conserved by avoiding formal litigation."  *Newberg* § 11.41;

27  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Van Bronkhorst v. Safeco*

28  *Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project v. Bonneville Power*

MEDINA McKELVEY LLP

*Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). The *Manual for Complex Litigation* characterizes the preliminary approval inquiry as a court's "initial assessment" of the fairness of the proposed settlement, made on the basis of written submissions and informal presentation from the settling parties, and summarizes the preliminary approval criteria as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice . . . be given to the Class Members of a formal Fairness Hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*Manual for Complex Litigation (Fourth)* § 30.41 (3d ed. 1995) (the "*Manual*").

The court "need not review the settlement in detail at this juncture." *In re M.L. Stern Overtime Litig.*, No. 07-CV-0118-BTM (JMA), 2009 U.S. Dist. LEXIS 31650, at *9 (S.D. Cal. Apr. 13, 2009).  Rather, the court must only find that the settlement falls within the range of possible final approval, also described as "the range of reasonableness." *See, e.g.*, *In re Portal Software Sec. Litig.*, No. C-03-5138 VRW, 2007 U.S. Dist. LEXIS 51794, at *14–*15 (N.D. Cal. June 30, 2007) (indicating that the court determines whether a settlement should be preliminarily approved by analyzing whether the proposed settlement falls within the range of reasonableness) (quotation omitted); *Ball v. Petrol Transp., Inc.*, No. CV-F-04-5370-AWI-LJO, 2006 U.S. Dist. LEXIS 35959, at *2 (E.D. Cal. June 2, 2006) (finding that the settlement was within a range of reasonableness of a settlement that could be finally approved by the court); *see also Newberg* § 11.25.

In making this determination, the court should give "proper deference to the private consensual decision of the parties . . . the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998) (quotation omitted).

///

1    Indeed, as a "[s]ettlement is the offspring of compromise," the question upon preliminary

2    approval "is not whether the final product could be prettier, smarter or snazzier, but whether it is

3    fair, adequate and free from collusion." *Id.* Accordingly, particularly when experienced counsel

4    familiar with the litigation have reached settlement, a court should not second guess the parties, or

5    substitute its judgment for that of the proponents of the settlement. *See*, *e.g.*, *In re Xoma Corp.*

6    *Sec. Litig.*, No. C-91-2252 TEH, 1992 U.S. Dist. LEXIS 10502, at *9 (N.D. Cal. July 14, 1992)

7    (holding that courts should be hesitant to substitute its judgment for that of experienced counsel

8    who recommend the settlement).

9    Courts have held that preliminary approval should be granted where the proposed

10   settlement is a "'product of serious, informed, non-collusive negotiations, has no obvious

11   deficiencies, does not improperly grant preferential treatment to class representatives or segments

12   of the class, and falls within the range of possible approval . . . .'" *Young*, 2006 U.S. Dist. LEXIS

13   81077, at *12-*13 (quotation omitted); *In re Portal Software Sec. Litig.*, 2007 U.S. Dist. LEXIS

14   51794, at *14 (same); *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

15   2007) (same).

16   1.   <u>Plaintiffs' Litigation Contentions and Views on the Proposed Settlement</u>

17   Here, the proposed Settlement falls well within the range of possible approval, sufficient

18   to support an order granting preliminary approval and directing issuance of notice.  Several

19   factors bolster this conclusion: the Settlement was the product of arm's-length negotiations

20   between the parties at a full-day mediation with respected mediator the Judge Lynn Duryee

21   (Ret.); the parties were represented by experienced counsel; and the Settlement confers immediate

22   and significant benefits to the Settlement Class compared to the substantial risks of proceeding

23   with litigation.  There is nothing in the course of the negotiations or the substance of the

24   Settlement that "disclose[s] grounds to doubt its fairness." *Manual* § 30.41.

25   The Class Members, represented by experienced counsel,[5] negotiated the proposed

26   Settlement with Defendant's Counsel after the Court entered an order that the parties attend

27

28   [5] The firm resume for Medina McKelvey LLP is attached as Exhibit 4 to the Nelson Decl.  The firm resume for Beck, Bismonte & Finley LLP is attached as   5 to the Nelson Decl.



private Alternative Dispute Resolution.  (Nelson Decl., ¶ 9.)  The parties agreed to attend mediation with the Honorable Judge Lynn Duryee (Ret.), a well-respected mediator in San Francisco. (Nelson Decl., ¶ 9.)  With that background, on August 9, 2017, the parties participated in a vigorous, full-day mediation session with Judge Duryee that lasted nearly twelve hours.  (*Id.* at ¶ 12.)  The case was able to resolve after Judge Duryee issued a mediator's proposal to the parties near the end of the mediation.  (*Id.*)

The extensive investigation that Class Counsel undertook before the parties attended mediation, the substantial amounts of information exchanged through informal discovery, and the parties' preparation for mediation has allowed Class Counsel to thoroughly assess the strengths and weaknesses of the claims against Defendant and the benefits of the proposed Settlement under the circumstances of this case.  (Nelson Decl., ¶¶ 10-11.)  Class Counsel believes that the Settlement represents an excellent result for the Class under the circumstances.  (*Id.* ¶ 37.)  *See, e.g., Hanlon*, 150 F.3d at 1026 (considering the views and experience of class counsel in assessing the fairness, reasonableness and adequacy of the proposed settlement).

The Settlement provides substantial and direct monetary relief to the approximately 445 Class Members.  The proposed recovery for the Class addresses the very claims underlying this lawsuit, namely that Defendant had wrongfully withheld FICA and SDI taxes from Plaintiffs' and the Class Members' wages.  With this Settlement, Settlement Class Members will receive an average recovery in excess of $2,800.00.  (Nelson Decl., ¶ 16.)  These payments are based primarily on the number of workweeks that Class Members worked during the Class Period, and also the Class Members' years of service with Defendant during the time that Defendant made deductions from their wages.

In addition, the attorneys' fees sought by Class Counsel, which represents 30 percent of the Gross Settlement Amount, are reasonable, particularly in cases such as this one:  complex contingent fee litigation involving difficult legal issues.  *See, e.g., Birch v. Office Depot, Inc.*, Case No. 06-cv-1690, 2007 U.S. Dist. LEXIS 102747 (S.D. Cal. Sept. 28, 2007) (awarding a 40 percent fee on a $16 million wage and hour class action)*; see also Rippee v. Boston Mkt. Corp.*, ///

- 20 -

No. 05-cv-1359, 2006 U.S. Dist. LEXIS 101136 (S.D. Cal. Oct. 10, 2006) (awarding a 40 percent fee on a $3.75 million wage and hour class action).

Class Counsel's requested attorneys' fee only represents 0.73 of their lodestar (approximately), which amounts to a negative multiplier on their extensive work in this case. For more than a year, the work undertaken by experienced Class Counsel was performed entirely on a contingent basis and is deserving of a positive multiplier. Class Counsel has, however, limited their attorneys' fee request to 30% of the Gross Settlement Amount to preserve a significant recovery for Settlement Class Members. (Nelson Decl., ¶ 40.) In addition, the requested class representative service awards of $10,000 are reasonable given the risks of litigation, as described above, the risk of an award of costs against them, as well as the significant assistance that they provided to Class Counsel and the Class in pursuing this litigation. (Nelson Decl., ¶ 41.) *See*, *e.g.*, *Birch*, 2007 U.S. Dist. LEXIS 102747, at *6–*7 (approving class representative service awards of $15,000).

> 2.   Defendant's Litigation Contentions

While Plaintiffs maintain that they have a strong case on behalf of the Class and should prevail at trial, there is considerable litigation risk. Defendant has asserted several different defenses in this case that if successful could significantly reduce or eliminate any damages or penalties that Plaintiffs could recover. This weighs heavily in favor of approving the Settlement.

First, one of the contentious issues in this case is whether California law applies to Plaintiffs' and Class Members' employment. Defendant took the position in its Motion to Dismiss that the protections of the California Labor Code (which all of Plaintiffs' claims are based on) do not apply to Plaintiffs and Class Members because of the amount of time that they spend working on California. Defendant's Motion to Dismiss focused on whether Plaintiffs' meal and rest breaks claims fail because Plaintiffs did not spend a majority of their time working in California. (*See* Defendant's Motion to Dismiss, 14:25–21:16.) Defendant has indicated that it will make the same arguments with respect to Plaintiffs' remaining Labor Code claims, and the Court's April 25 Order permitted Defendant to petition the Court to file an early motion for summary judgment on this issue.

Second, Defendant has also argued that Plaintiffs' claims premised on FICA and SDI deductions are preempted or barred by federal and state law. Defendant has argued that these claims are essentially claims for tax refunds (or related to claims for tax refunds) and therefore are preempted by 26 U.S.C. § 7422 and the California Constitution. (*See* Defendant's Motion to Dismiss, 7:14–13:5.) Defendant has relied primarily on two similar district court cases in Oregon for the proposition that claims for penalties that derive from deductions for FICA taxes are preempted.[6] Currently, there are no district court cases in California with similar holdings, although this could change at any time. And, as indicated by Defendant's Motion to Certify the Court's April 25 Order for Interlocutory Appeal, Defendant intends to appeal any order permitting these claims to go forward.

In light of these arguments and others related to limiting the amount of penalties recoverable by Class Members even if liability were imposed, and the risk that they pose to the success of Plaintiffs' claims, the substantial and certain recovery available to Settlement Class Members through the proposed Settlement weighs heavily in favor of preliminary approval.

## C.      Plaintiffs Contend that the Proposed Settlement Class Satisfies the Requirements of Rule 23

Before addressing the adequacy of the proposed settlement, the court must determine whether the class, as agreed to by the parties, may be certified for settlement purposes. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612–613 (1997). A court may grant conditional approval of a class action where the class satisfies the four prerequisites of Rule 23(a) (numerosity, commonality, typicality and adequacy), as well as one of the three subsections of Rule 23(b). *See, e.g.*, *Amchem*, 521 U.S. at 614.

Here, the numerosity requirement is met. The total number of Class Members is over 400 individuals. (Nelson Decl., ¶ 13.) Given that "courts will typically find the numerosity requirement satisfied when a class includes 40 or more members," *Sibert v. TV Magic, Inc.*, 2012 U.S. Dist. LEXIS 118245 (C.D. Cal. Aug. 21, 2012) (citing *Rannis v. Recchia*, 380 Fed.Appx.

---

[6] *See Fredrickson v. Starbucks Corporation*, 980 F.Supp.2d 1227 (D. Or. 2013), *rev'd on other grounds*; *Marshall v. Pollin Hotels II, LLC*, 170 F.Supp. 1290, 1306–07 (D. Or. 2016).

646, 651 (9th Cir. 2010)), and given that common sense indicates that joinder of all Class Members would be "impracticable," the Class is sufficiently numerous to justify certification for settlement purposes.

Likewise, the commonality requirement is met.  In this regard, a plaintiff is *not* required to show that there is commonality on *every* factual and legal issue; instead, "for purposes of Rule 23(a)(2) '[e]ven a single [common] question' will do."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (brackets in original).  *See also Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 602 (C.D. Cal. 2012) (explaining that, "[e]ven after *Dukes*, the commonality inquiry does not require plaintiffs to demonstrate the 'predominance' of common issues over individualized ones, nor the 'cohesion' of the class").  With respect to the present matter, there is considerable commonality among Class Members, because all the Class Members were subject to the same allegedly wrongful deductions of FICA and SDI taxes.  The legality of these deductions can be determined on a classwide basis only once rather than many separate times in individual suits brought by each Class Member.  This issue, in fact, predominates over any issues that affect only individual Class Members.

Plaintiffs also meet the typicality requirement, and they are adequate Representative Plaintiffs.  The fact pattern for Plaintiffs is identical to that of other Class Members.  Plaintiffs, and the other Class Members, were all Cabin Crew employees based in California and subject to deductions for FICA and SDI taxes.  Plaintiffs also have no conflicts of interest with the Class, as they share Class Members' likely desire to receive penalties and damages to which they are entitled.  Additionally, Plaintiffs are committed to pursuing the claims of the Class, and their motivation in pursuing this action has been to seek reimbursement for themselves and the Class and to ensure that Defendant complies with wage and hour requirements.  (Nelson Decl., ¶ 41).

In addition to the four requirements described above, this case must also meet one of the non-exclusive factors in Fed. R. Civ. Proc. 23(b).  Rule 23(b) authorizes class certification if a court determines that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. Proc.

- 23 -

23(b)(3).  As noted with respect to the commonality requirement, the central issue in this case is the legality of the deductions that Defendant took from Plaintiffs' and Class Members' wages. The only individual determination, then, is the quantification of damages for each Class Member—and such an individual determination does not defeat class certification.  *See Yokoyama v. Midland Nat'l Life Ins. Co.*, 594 F.3d 1087, 1089 (9th Cir. 2010) (stating that "[t]he potential existence of individualized damages assessments . . . does not detract from the action's suitability for class certification," and explaining that "[o]ur court long ago observed that '[t]he amount of damages is invariably an individual question and does not defeat class action treatment'").  Accordingly, the class should be certified for settlement purposes.

## V.     THE PROPOSED NOTICE TO MEMBERS OF THE CASS IS ADEQUATE AND SATISFIES DUE PROCESS

Rule 23(e)(1) provides that "[t]he Court must direct notice in a reasonable manner to all class members who would be bound by the proposal."  Rule 23(e).  Rule 23(e) requires that notice of a proposed settlement inform class members of the following: (1) the nature of the pending litigation; (2) the general terms of the proposed settlement; (3) that complete information is available from the court files; and (4) that any class member may appear and be heard at the fairness hearing.  *Newberg* § 8.32.  The notice must also indicate an opportunity to opt out, that the judgment will bind all class members who do not opt out, and that any member who does not opt out may appear through counsel.  Rule 23(c)(2).

Subsection (c)(2)(B) of Rule 23 further provides that "[f]or any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *Id.*  The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

Here, the proposed notice to the Class should be approved.  The proposed notice plan consists of direct notice conveyed to Class members via First Class Mail.  In the event that the

- 24 -

1    Settlement Administrator receives return mail messages stating that notice was undeliverable, the

2    Settlement Administrator will make reasonable efforts to locate forwarding addresses for Class

3    Members (including skip tracing) and if it obtains a more recent address, will re-send the Notice

4    Packet.  (Settlement Agreement ¶ 4.4.)  This Notice Plan will maximize the likelihood that Class

5    Members will be notified of the proposed settlement and its terms.

6            Furthermore, the notice clearly sets forth the controversy between the parties and the

7    terms of the proposed Settlement, as well as the ways that Class Members may participate, object

8    or exclude themselves.  *See*, *e.g.*, *Churchill Vill, LLC, v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir.

9    2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient

10   detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'")

11   (quoting *Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980)).  The notice also clearly

12   states that the Settlement does not constitute an admission of liability by Defendant and that the

13   Court has not ruled on the merits of the action.  Copies of the proposed Notice Packet are attached

14   as Exhibits 2 and 3 to the Nelson Decl.

15           The proposed Notice Packet should be approved and disseminated to Class Members.

16   **VI.    CONCLUSION**

17           Plaintiffs have demonstrated that the proposed settlement provides a very favorable result

18   to all the class members, and Plaintiffs therefore respectfully request that the Court preliminary

19   approve the settlement.

20

21   Dated:  December 5, 2017                    MEDINA McKELVEY LLP

22

23                                              By:___/s/ Timothy B. Nelson_____
                                                    TIMOTHY B. NELSON
24                                                  Attorney for Plaintiffs

25

26

27

28